IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATIONS FUND, LLC,                          :
     Plaintiff                              :          No. 1:26-cv-00101
                                             :
v.                                          :          (Judge Kane)
                                             :
NTP MARBLE, INC.,                           :
and POSEIDON INDUSTRIES, INC.,              :
     Defendants                             :

## MEMORANDUM

Before the Court is a motion seeking dismissal of Plaintiff Nations Fund, LLC

("Plaintiff")'s amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by

Defendant NTP Marble, Inc. ("Defendant NTP" or "NTP").   (Doc. No. 13.)   Also before the

Court is Plaintiff's request for default judgment against Defendant Poseidon Industries, Inc.

("Defendant Poseidon").   (Doc. No. 19.)   For the following reasons, the Court will grant the

motion to dismiss in part and deny it in part and deny Plaintiff's request for default judgment

against Defendant Poseidon without prejudice.

## I.      BACKGROUND[1]

On or about December 27, 2024, Plaintiff, a citizen of a state other than Pennsylvania

with a principal place of business in Connecticut, and Defendant NTP, a citizen of Pennsylvania

(Doc. No. 5 ¶¶ 3–8), entered into a Master Lease Agreement ("MLA") which provided that

Defendant NTP would lease from Plaintiff certain equipment and property ("Equipment")

described in various equipment schedules executed pursuant to the MLA (id. ¶ 11).[2]   Plaintiff

---

[1] The factual background is drawn from Plaintiff's amended complaint, the allegations of which the Court accepts as true for purposes of the pending motion to dismiss.   See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).

[2]   Plaintiff attaches the MLA as Exhibit A to the amended complaint.   (Id. ¶ 12; Doc. No. 5-1.)

alleges that the MLA included a "Payment Direction Authorization" pursuant to which Defendant NTP "irrevocably authorized and instructed Plaintiff to disburse funds in the amount of $2,031,000.00" to Defendant Poseidon, a citizen of the state of Florida.   (Id. ¶¶ 9, 13.) Plaintiff asserts that, on or about December 27, 2024, it wired $2,031,000.00 to Defendant Poseidon.   (Id. ¶ 14.)[3]   Plaintiff avers that subsequently, on or about November 18, 2025, Plaintiff sent a Notice of Default and Demand for Payment ("First Notice") via electronic and overnight mail to Defendant NTP for the purpose of "providing notice [that] [NTP][4] was in default of the MLA for failure to pay amounts due and owing thereunder and demanding immediate payment of past due amounts."   (Id. ¶ 16.)[5]   Plaintiff further avers that, on or about January 7, 2026, Plaintiff's counsel sent a Notice of Default and Demand for Payment ("Second Notice") via electronic and overnight mail to Defendant NTP, notifying it that "due to [NTP's][6] defaults under the MLA, Plaintiff 'accelerates and declares the entire balance due and owing under the MLA to be immediately due and payable in full,' and providing that the total amount due under the MLA as of January 7, 2026, including liquidated damages, is $2,178,173.92." (Id. ¶ 18.)[7]   Plaintiff asserts that "NTP has not cured the default or otherwise responded to

---

[3]   Plaintiff attaches invoices from Poseidon for the Equipment as Exhibit B to its amended complaint.   (Id. ¶ 15; Doc. No. 5-2.)

[4]   In its brief in opposition to Defendant NTP's motion to dismiss, Plaintiff clarifies that it included a "scrivener's error" in this paragraph of its amended complaint when it referenced "Plaintiff" instead of "NTP."   (Doc. No. 16 at 3 n.3.)

[5]   Plaintiff attaches the "First Notice" as Exhibit C to its amended complaint.   (Id. ¶ 17; Doc. No. 5-3.)

[6]   In its brief in opposition to Defendant NTP's motion to dismiss, Plaintiff clarifies that it included a "scrivener's error" in this paragraph of its amended complaint when it referenced "Plaintiff" instead of "NTP."   (Doc. No. 16 at 3 n.3.)

[7]   Plaintiff attaches the "Second Notice" as Exhibit D to its amended complaint.   (Id. ¶ 19; Doc.

2

Plaintiff's demands for payment." (Id. ¶ 20.)

On January 16, 2026, Plaintiff filed its complaint in this Court asserting one count of breach of contract and an alternative count of unjust enrichment against Defendant NTP. (Doc. No. 1.) Before Defendant NTP responded to the complaint, on February 19, 2026, Plaintiff filed an amended complaint asserting the same breach of contract (Count I) and alternative unjust enrichment (Count II) claims against Defendant NTP based on Defendant NTP's alleged failure to pay a delinquent balance under the MLA. (Doc. No. 5 at 1–6.) The amended complaint adds two additional counts against Defendant NTP—conversion (Count III) and replevin (Count IV)— which allege, as to the conversion count, that to the extent Defendant NTP has possession of the Equipment governed by the MLA, it has converted the Equipment and so Plaintiff is entitled to the value of the equipment of $2,031,000.00. (Id. at 6–7.) As to the replevin count, Plaintiff alleges that it is entitled to the immediate return of the Equipment and "special damages for broker fees paid in connection with the purchase of the Equipment in the amount of $50,775.00." (Id. at 7–8.)

Plaintiff's amended complaint also adds Poseidon as a Defendant and alleges "alternative" claims of unjust enrichment (Count V), conversion (Count VI), and replevin (Count VII) against it based on Plaintiff's alternative allegation that Defendant Poseidon accepted $2,031,000.00 from Plaintiff but has failed to deliver the Equipment in exchange for the payment. See (id. at ¶¶ 43, 45 ("[a]lternatively, Plaintiff brings a cause of action for unjust enrichment against Poseidon" because "Poseidon has been unjustly enriched by receiv[ing] $2,031,000.00 from Plaintiff and failing to deliver the Equipment"); ¶ 49 ("[a]lternatively, to the extent Poseidon is in possession of the equipment, such possession is intentionally wrongful

No. 5-4.)

3

following the payment to Poseidon by Plaintiff"); ¶ 55 ("[a]lternatively, to the extent Poseidon is in possession of the Equipment, such possession is intentionally wrongful following the payment to Poseidon by Plaintiff")).

After seeking an extension of time to respond to the amended complaint (Doc. No. 8), which the Court granted (Doc. No. 9), Defendant NTP filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 13) on April 20, 2026. Defendant NTP filed its brief in support of its motion on May 4, 2026.   (Doc. No. 14.)   Plaintiff filed its brief in opposition to the motion on May 18, 2026.   (Doc. No. 16.)   Because the time for filing a reply brief has expired, the motion is ripe for disposition.

On June 10, 2026, Plaintiff, representing that Defendant Poseidon failed to timely respond to the amended complaint, filed a request for entry of default as to Defendant Poseidon (Doc. No. 17) with an attached affidavit (Doc. No. 17-1) and proposed order (Doc. No. 17-2). The Clerk of Court entered default as to Defendant Poseidon on June 12, 2026.   (Doc. No. 18.) On June 25, 2026, Plaintiff filed a request for entry of default judgment against Defendant Poseidon in the amount of $2,081,775.00.   (Doc. No. 19.)[8]

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.   See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).   The plaintiff must present facts that, accepted as true, demonstrate a

---

[8]   Plaintiff's request for default judgment is directed to the Clerk of Court and purports to seek default judgment for a sum certain in the amount of $2,081,775.00.   (Doc. No. 19.)   Plaintiff attaches an affidavit in support of its request (Doc. No. 19-1) and a proposed order (Doc. No. 19-2).

plausible right to relief.   See Fed. R. Civ. P. 8(a).   Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."   See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.   See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).   The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 552 U.S. 662 (2009).   Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."   See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).   To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible."   See id.   The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.   As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"   See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained

5

in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### B.    Request for Entry of Default Judgment

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure. An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b). See 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2682 (4th ed. 2016) ("Prior to obtaining a default judgment under [Rule 55(b)], there must be an entry of default as provided by Rule 55(a)"). Entry of default does not entitle a claimant to default judgment as a matter of right. See 10A James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender 3d ed. 2010). Rather, decisions relating to the entry of default judgments are committed to the sound discretion of the district court. See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987). Three factors control the exercise of the Court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).

## III.   DISCUSSION

The Court first addresses NTP's motion to dismiss the amended complaint's claims against it before addressing Plaintiff's request for entry of a default judgment against Defendant Poseidon.

### A.   NTP's Motion to Dismiss the Amended Complaint

Defendant NTP challenges the amended complaint on several grounds.   First, NTP argues that all of Plaintiff's claims against it fail because "Plaintiff has not pleaded that NTP received the equipment it is entitled to under the contract" and "[i]n fact, NTP has not received the equipment" (Doc. No. 13 at 2); therefore, NTP argues that Plaintiff has not stated a plausible claim for relief (id. at 3).   NTP also argues that Plaintiff's demand for attorney's fees and a jury trial must be stricken from the amended complaint.   (Id.)   Defendant NTP asserts that Plaintiff's demand for attorney's fees must be stricken pursuant to the American Rule and that Plaintiff's jury demand must be stricken because the parties waived any jury trial right in Section 19(f) of the MLA.   (Id.)

#### 1.   Choice of Law

Before assessing the merits of Defendant's motion to dismiss, the Court first addresses a discrepancy in the substantive law referenced by the parties.   In NTP's brief in support of its motion to dismiss, it refers to the law of the state of Connecticut in connection with its discussion as to whether Plaintiff's amended complaint states plausible claims for breach of contract, unjust enrichment, conversion, or replevin.   (Doc. No. 14 at 5–8.)   It does so because it represents that the MLA contains a Connecticut choice of law provision.   (Id. at 5 n.1 (citing Doc. No. 5-1 § 19(i)).)   By contrast, in its brief opposing the motion to dismiss, Plaintiff fails to mention NTP's reference to Connecticut law or the MLA's choice of law provision and instead references

7

Pennsylvania law in arguing that its amended complaint plausibly states claims for breach of contract, unjust enrichment, conversion, and replevin.   (Doc. No. 16 at 6–13.)[9]   Accordingly, before it can analyze whether Plaintiff's amended complaint states plausible claims against Defendant NTP, the Court must first determine the appropriate body of law to apply to those claims.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.   The Third Circuit has held that in diversity cases such as this one, the court must "look to the choice-of-law rules of the forum state—the state in which the [d]istrict [c]ourt sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice of law clause."   See Collins On behalf of herself v. Mary Kay, Inc., 874 F.3d 176, 183 (3d Cir. 2017) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), which held that a federal court sitting in diversity must apply the choice-of-law rules of the forum state); see also Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994) (applying Pennsylvania's choice-of-law rules in a diversity case, despite the presence of choice-of-law clause selecting Illinois law, and concluding that Illinois law governs the interpretation of the indemnity clause of a lease agreement).

"Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."   Kruzits, 40 F.3d at 55 (citing Smith v. Commonwealth Nat. Bank, 557 A.2d 775, 777 (Pa. Super. Ct. 1989), appeal denied, 569 A.2d 1369 (Pa. 1990)).   "[T]he extent to which, and to what types of claims, Pennsylvania courts will apply a choice of law provision in a contract is determined by a number of factors."   Grimm v. Citibank (South Dakota), N.A., No. 08-cv-00788, 2008 WL 4925631, at *4 (W.D. Pa. Nov. 14,

---

[9]   Curiously, although Plaintiff generally references and discusses Pennsylvania law in its brief

2008).   "One such factor is the breadth of the contractual choice of law provision," as "[n]arrow choice of law provisions stating that a contract's terms or enforcement are to be governed, or construed, by the laws of another state are generally interpreted by Pennsylvania courts to relate only to the construction and interpretation of the contract at issue."   See id. (citing Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc., 848 F. Supp. 569, 576 (E.D. Pa. 1994)).   In that regard, "[c]ontractual choice of law provisions . . . do not govern tort claims between the contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." See Jiffy Lube, 848 F. Supp. at 576.

Here, the choice of law provision contained in the MLA and cited by NTP provides as follows:

> THIS LEASE AND ALL OF THE OTHER LEASE DOCUMENTS, AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER AND THEREUNDER, SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CONNECTICUT (THE "STATE") (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF THE STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT.

(Doc. No. 5-1 § 19(i).)   Accordingly, because Plaintiff's breach of contract claim against NTP is based on its alleged failure to make payments to Plaintiff for the lease of certain equipment pursuant to the MLA, the Court will apply Connecticut law to Plaintiff's breach of contract claim in accordance with the above provision.   However, the Court must determine which jurisdiction's law applies to Plaintiff's alternative claim of unjust enrichment, as well as its conversion and replevin claims.

As noted supra, "[n]arrow choice of law provisions stating that a contract's terms or enforcement are to be governed, or construed, by the laws of another state are generally

---

in opposition, it cites a Connecticut case in a footnote.   (Doc. No. 16 at 8 n.6.)

interpreted by Pennsylvania courts to relate only to the construction and interpretation of the contract at issue." See Grimm, 2008 WL 2925631, at *4 (citing Jiffy Lube Int'l, Inc., 848 F. Supp. at 576). Therefore, "courts within this circuit have held that 'narrow choice of law provisions are generally held insufficient to encompass the contracting parties' tort claims.'" See id. (quoting Wright v. McDonald's Corp., No. 91-cv-02061, 1993 WL 53582, at *7 n.6 (E.D. Pa. 1993)).

The Court finds that the choice of law provision in the MLA is narrowly drawn because it speaks only to "this lease and all of the other lease documents and the rights and obligations of the parties hereunder and thereunder"—not to all matters concerning the parties. Therefore, the Connecticut choice of law provision in the MLA does not apply to Plaintiff's non-contractual claims—unjust enrichment (Count II), conversion (Count III), and replevin (Count IV). The Court must separately analyze the remaining claims to determine which jurisdiction's law is applicable to those claims.

If there is no difference between the potentially applicable laws, there can be no conflict between the two states' laws, and a choice of law analysis is unnecessary. See Hammersmith v. TIG Insur. Co., 480 F.3d 220, 230 (3d Cir. 2007). "Thus, the first part of the choice of law inquiry is best understood as determining if there is an actual or real conflict between the potentially applicable laws." Id. (emphasis in original). If no difference or conflict exists between the two states' law, then the law of the forum state applies. See id. "If there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." Id. If a true conflict exists between the two states' laws, then "the [c]ourt must then determine which state has the 'greater interest in the application of its law.'" See id. at 231

10

(quotation omitted).   The relevant methodology to be applied in making that determination is "a combination of the 'approaches of both [the] Restatement II (contacts establishing significant relationships) and "interests analysis" (qualitative appraisal of the relevant States' policies with respect to the controversy.'"   See id. (internal quotation omitted).   Accordingly, this approach entails "more than a 'mere counting of contacts.'"   See id. (quotation omitted).

Because the parties' briefs reference Connecticut and Pennsylvania law, the Court assesses only the law of those two jurisdictions to determine whether any conflict exists.   First, as to Plaintiff's claim of unjust enrichment, the Court notes that unjust enrichment "is based in equity and is [a claim] which sounds in quasi-contract or contract implied in law."   See Maid-Rite Specialty Foods Inc. v. Global Food Solutions, Inc., No. 3:24-cv-01057, 2025 WL 259385, at *3 (M.D. Pa. Jan. 21, 2025) (internal quotation marks and citations omitted).   Under Pennsylvania law, unjust enrichment is "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution."   See Roethlein v. Portnoff L. Assocs., Ltd., 81 A.3d 816, 823 n.8 (Pa. 2013).   Connecticut law defines the concept of unjust enrichment as "the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated." See Gleason v. Durden, 272 A.3d 1129, 1138 (Conn. App. Ct. 2022).   Because the elements of an unjust enrichment claim under either Pennsylvania or Connecticut law are essentially the same, the Court will apply the law of the forum—Pennsylvania—to this claim.   See Hammersmith, 480 F.3d at 229–30.

Second, as to Plaintiff's conversion claim, Pennsylvania law defines the claim as "the deprivation of another's right of property in, or use or possession of, a chattel, without the

owner's consent and without lawful justification."   See Gotham City Enterprises, LLC v. Abundance Wealth Counselors, LLC, No. 4:25-cv-01725, 2026 WL 637355, at *7 (M.D. Pa. Mar. 6, 2026) (internal quotation marks and citations omitted).   Similarly, Connecticut law defines the tort of conversion as "an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights . . . ."   See Kopperl v. Bain, 23 F. Supp. 3d 97, 103 (D. Conn. 2014) (quoting Macomber v. Travelers Property and Casualty Corp., 804 A.2d 180, 198 (Conn. 2002)).   Because there is no difference in the law of Pennsylvania and Connecticut as to the elements of the tort of conversion, the Court will apply Pennsylvania law to this claim.   See Hammersmith, 480 F.3d at 229–30.

Third, as to Plaintiff's claim for replevin, Pennsylvania law states that "[t]o prevail in a replevin action, 'the plaintiff must show not only title, but also the exclusive right of immediate possession of the property in question.'"   See Susquehanna Commercial Fin., Inc. v. French, No. 10-cv-07481, 2011 WL 1743503, at *4 (E.D. Pa. May 5, 2011) (quoting Ford Motor Credit Co. v. Caiazzo, 564 A.2d 931, 933 (Pa. Super. Ct. 1989)).   The plaintiff "must show good title and right to possession as against the defendant . . . ."   See Ford Motor Credit Co., 564 A.2d at 933 (citing Gensbigler v. Shawley, Inc., 60 A.2d 360, 362 (Pa. Super. Ct. 1948)).   Under Connecticut law, a plaintiff asserting a claim of replevin "must establish that (1) the property sought is 'goods or chattels' within the meaning of [Conn. Gen. Stat. § 52-515]; (2) she has a 'property interest' in the property; (3) she has a right to immediate possession of the property; and (4) the defendant has wrongfully detained the property."   See O'Brien v. Rogovin Moving & Storage Co., Inc., No. 3:04-cv-01150, 2005 WL 8167308, at *2 (D. Conn. Mar. 4, 2005) (citing Cornelio v. Stamford Hospital, 717 A.2d 140, 143 (Conn. 1998)).   Except for the Connecticut standard's reference to the definition of "goods or chattels" under Connecticut

statute, the elements of a claim for replevin under both state's laws are the same—a plaintiff must demonstrate a property right to the property as against the defendant, entitling the plaintiff to immediate possession of the property.   Accordingly, because the elements of a replevin claim under Connecticut and Pennsylvania law are the same in all relevant respects, the Court will apply Pennsylvania law to this claim.   See Hammersmith, 480 F.3d at 229–30.

Having determined that the law of Connecticut applies to Plaintiff's breach of contract claim and that Pennsylvania law applies to Plaintiff's unjust enrichment, conversion, and replevin claims, the Court below assesses NTP's challenge to each claim.

### 2.   Breach of Contract (Count I)

The elements of a breach of contract claim under Connecticut law are: "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."   See Sullivan v. Thorndike, 934 A.2d 827, 833 (Conn. App. Ct. 2007) (quoting Chiulli v. Zola, 905 A.2d 1236, 1243 (Conn. App. Ct. 2006)).

NTP argues that "[a]lthough Nations Fund alleges NTP has breached the MLA by not making any payments, no payments are due yet."   (Doc. No. 14 at 5.)   NTP references the Equipment Schedule attached to the MLA and executed on the same date (Doc. No. 5-1 at 16–17), stating that under that schedule, "until NTP receives and accepts the equipment, the lease is in an 'Interim Term'" and "Interim Term lease payments are not due until the Base Date," which is "the 1st or the 15th day of the first full month following [NTP's] acceptance of the Equipment."   (Doc. No. 14 at 6 (quoting Doc. No. 5-1 at 16).)   NTP asserts that Plaintiff "has not pleaded that NTP accepted or currently possesses the equipment" and so Plaintiff has failed to plead a breach of contract claim under Connecticut law.   (Doc. No. 14 at 6–7.)

In response, Plaintiff first states that "to the extent NTP bases its Motion to Dismiss on its

own unsupported factual assertion that it 'has not received the equipment'" (Doc. No. 16 at 5 (quoting Doc. No. 13 at 2)), the Court must disregard any such factual assertion in connection with its assessment of NTP's motion to dismiss.   Plaintiff also argues that it has pleaded NTP's acceptance of the equipment by way of "the plain assertions in the Amended Complaint and language contained in the MLA."   (Doc. No. 16 at 6.)   Plaintiff contends that the amended complaint alleges the following:

> (1) at the time NTP entered into the MLA, NTP agreed and understood that it would be bound by and liable for the duties and obligations set forth in the MLA, including the payment of all Rents due and owing thereunder[] (doc. 5 ¶ 22) (2) NTP "was in default of the MLA for failure to pay amounts due and owing thereunder and demanding immediate payment of past due amounts" (doc. 5 ¶ 16); and (3) "NTP breached the express terms of the MLA by failing to make payments when due" (doc. 5 ¶ 23).

(Doc. No. 16 at 7.)   Accordingly, Plaintiff argues that it "has alleged that payments were due under the MLA which NTP failed to pay" and therefore has stated a claim for breach of contract.

 (Id.)   Plaintiff notes in a footnote that "to the extent that Plaintiff's claims rely on NTP's alleged possession of the Equipment, the reasonable inference drawn from Plaintiff's above-summarized allegations is that NTP accepted—i.e., took possession of—the Equipment, thus causing payments to be due under the MLA."   (Id. at n.5.)   Plaintiff also notes NTP's reference to the amended complaint's allegation that "[t]he location of the Equipment is unknown to the Plaintiff at this time" and maintains that its "allegation that it does not know the present location of the Equipment is not contrary to Plaintiff's allegations that NTP accepted the Equipment prior to the execution of the MLA, as the MLA itself reflects."   (Id. at 7–8.)[10]

---

[10]   Plaintiff references paragraph five of the Equipment Schedule attached to the MLA, which provides that "[NTP] hereby confirms and warrants to [Plaintiff] that the Equipment: (a) was duly delivered to [NTP] at the location specified above; (b) has been received, inspected and determined to be in compliance with all applicable specifications and that the Equipment is hereby accepted for all purposes of the Lease; and (c) is a part of the 'Equipment' referred to in

14

Upon careful consideration of the allegations of Plaintiff's amended complaint, the parties' briefs, and relevant authority, the Court finds that Plaintiff has plausibly alleged a breach of contract claim against NTP.   The Court agrees with Plaintiff that its allegations that payments were due under the MLA and that NTP failed to make such payments supports the plausible inference that NTP accepted possession of the Equipment purchased by Plaintiff, causing payments to be due under the MLA.   In addition, as noted by Plaintiff, the Equipment Schedule attached to the MLA provides NTP's confirmation that the Equipment was delivered to it.   See (Doc. No. 5-1 at 17).   Accordingly, the amended complaint pleads the formation of an agreement (the MLA), Plaintiff's performance of its obligations under the MLA (by way of its payment to Defendant Poseidon for purchase of the Equipment), NTP's failure to make payments as required under the MLA, and Plaintiff's resultant damages.   The Court will deny NTP's motion to dismiss Plaintiff's breach of contract claim asserted against it.

### 3.      Unjust Enrichment (Count II)

As discussed supra, Pennsylvania law applies to Plaintiff's non-contractual claims.   In arguing that the Court should dismiss Plaintiff's unjust enrichment claim, NTP cites Connecticut law for the proposition that "unjust enrichment is not available as a remedy when there is a valid contract between the parties and that contract addresses the matter at issue[.]"   (Doc. No. 14 at 7 (quoting Gleason, 272 A.3d at 1138).)   NTP argues that "[b]ecause the MLA is a valid and enforceable contract that governs the lease of the equipment, [Plaintiff] cannot bring an unjust enrichment claim."   (Doc. No. 14 at 7.)

In response, and as noted supra, Plaintiff references Pennsylvania law in its brief in opposition to NTP's motion.   Plaintiff maintains that "[u]njust enrichment claims may be pled

---

the Lease . . . ."   (Doc. 16 at 8 (citing Doc. No. 5-1 at 17).)

as an alternative to a breach of contract claim" and acknowledges that "[w]hen unjust enrichment is pled as an alternative to breach of contract, recovery is unavailable if a written or express contract exists."   (Doc. No. 16 at 9 (citing Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 492–93 (E.D. Pa. 2016) (citing Lugo v. Farmers Pride, Inc., 967 A.2d 963, 970 n.5 (2009))).) Plaintiff argues that it "may pursue alternative theories of recovery based on both breach of contract and unjust enrichment even when the existence of a valid contract would preclude recovery under unjust enrichment."   (Doc. No. 16 at 9 (citing Atlantic Paper Box Co. v. Whitman's Chocolates, 844 F. Supp. 1038, 1043 (E.D. Pa. 1994)).)   Plaintiff distinguishes Gleason, cited by NTP, noting that the opinion concerns an appeal of a judgment entered after a bench trial, and so in that case the court had already determined that a valid contract existed. (Doc. No. 16 at 10.)   Plaintiff cites Piccolo v. American Auto Sales, LLC, 225 A.3d 961 (Conn. App. Ct. 2020), a Connecticut case acknowledging that "parties routinely plead alternative counts alleging breach of contract and unjust enrichment."   See id. at 966.   Plaintiff also maintains that pursuant to the Erie[11] doctrine, a federal court sitting in diversity must apply federal procedural law, including the rules of pleading, which are governed by Federal Rule of Civil Procedure 8.   (Doc. No. 16 at 10.)   Plaintiff cites various federal authorities in support of the proposition that the Federal Rules authorize pleading claims in the alternative.   (Id. at 10–11.)

Plaintiff maintains that its amended complaint plausibly alleges an alternative claim of unjust enrichment because it pleads the following: "based upon the representations of NTP, Plaintiff paid to purchase equipment for NTP's use pursuant to the terms of the MLA"; "NTP irrevocably authorized and instructed Plaintiff to disburse funds in the amount of $2,031,000.00

---

[11]   Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

16

to Poseidon"; "Plaintiff further pled that NTP retained and appreciated the benefits Plaintiff provided, and retained those benefits at Plaintiff's expense"; and that "Plaintiff has been harmed by providing the benefits to NTP without receiving payments from NTP".   (Doc. No. 16 at 11 (citing Doc. No. 5 ¶¶ 13, 25, 27–29).)   Accordingly, Plaintiff contends that it has plausibly alleged an alternative claim for unjust enrichment.   (Id. at 11–12.)

Upon careful consideration of the allegations of the amended complaint, the briefs of the parties, and relevant authority, the Court finds that Plaintiff has plausibly alleged an alternative unjust enrichment claim.   The Federal Rules of Civil Procedure, which apply to state law claims litigated in federal court, see Chamberlain, 210 F.3d at 158, authorize pleading claims in the alternative.   See Fed. R. Civ. P. 8(d)(2) ("[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count of defense or in separate ones"); 8(d)(3) ("[a] party may state as many separate claims or defenses as it has, regardless of consistency"); Pierre v. Healthy Bev., LLC, No. 20-cv-04934, 2022 WL 596097, at *14 (E.D. Pa. Feb. 28, 2022) (stating that "Federal Rule 8 authorizes pleading claims in the alternative and inconsistently"); Jeanjacques v. AMC Entm't Holdings, Inc. No. 21-cv-3670, 2021 WL 4478665, at *3 (E.D. Pa. Sept. 30, 2021) (stating that "Federal Rules of Civil Procedure 8(d)(2) and 8(d)(3) govern our construction of pleadings").   Accordingly, Plaintiff may plead a breach of contract claim and an alternative unjust enrichment claim, and so the Court will deny NTP's motion to dismiss Plaintiff's alternative unjust enrichment claim.

### 4.    Conversion (Count III)

As noted supra, "[c]onversion is defined under Pennsylvania law as the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification."   See Gotham City Enterprises, LLC, 2026 WL 637355, at *7

17

(citations and internal quotation marks omitted).

Citing to Connecticut law, NTP argues simply that "[Plaintiff] has not pleaded that NTP possessed or disposed of the equipment" and so "[Plaintiff] cannot state a conversion claim." (Doc. No. 14 at 8.)   In response, Plaintiff argues that it has pleaded the following facts plausibly alleging a conversion claim: "To the extent NTP received, accepted and is in possession of the equipment, NTP has intentionally failed to return the equipment upon default of the MLA"; "Plaintiff remains title owner of the Equipment"; and "Plaintiff is entitled to immediate possession of the Equipment."   (Doc. No. 16 at 12 (citing Doc. No. 5 ¶¶ 31–33).)

Upon careful consideration of the amended complaint, the parties' briefs, and the relevant law, the Court finds that Plaintiff has plausibly alleged a conversion claim.   As stated supra in connection with its discussion of Plaintiff's breach of contract claim, the Court has already determined that the amended complaint's allegations support the plausible inference that NTP accepted possession of the Equipment purchased by Plaintiff, causing payments to be due to Plaintiff.   Accordingly, the amended complaint plausibly alleges the deprivation of Plaintiff's property rights in the Equipment by NTP without lawful justification given NTP's alleged failure to make payments under the MLA and therefore states a plausible conversion claim under Pennsylvania law.[12]   The Court will deny NTP's motion to dismiss this claim.

---

[12]   The Court notes that there is Pennsylvania authority suggesting that the "gist of the action" doctrine may bar a tort claim for conversion where a party's rights in the property arise from an applicable contract.   See Premier Payments Online, Inc. v. Payment Systems Worldwide, 848 F. Supp. 2d 513, 529 (E.D. Pa. 2012) (stating that "[c]ourts have dismissed conversion claims under the gist of the action doctrine where the alleged entitlement to the chattel arises solely from the contract between the parties") (quoting Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 622–23 (E.D. Pa. 2010) (collecting cases)).   However, that case also notes that "[w]hen a plaintiff has a property interest in the thing that is the subject of a [conversion] claim, the gist of the action doctrine does not bar recovery under a conversion theory even though the property may also be the subject of a contract."   See id. (quoting Brown & Brown, 745 F. Supp. 2d at 623).   Because the only basis for NTP's motion to dismiss Plaintiff's conversion claim is its

18

### 5.      Replevin (Count IV)

As noted, Pennsylvania law states that "[t]o prevail in a replevin action, 'the plaintiff must show not only title, but also the exclusive right of immediate possession of the property in question.'"   See Susquehanna Commercial Fin., Inc. v. French, No. 10-cv-07481, 2011 WL 1743503, at *4 (E.D. Pa. May 5, 2011) (quoting Ford Motor Credit Co. v. Caiazzo, 564 A.2d 931, 933 (Pa. Super. Ct. 1989)).   The plaintiff "must show good title and right to possession as against the defendant . . . ."   See Ford Motor Credit Co., 564 A.2d at 933 (citing Gensbigler v. Shawley, Inc., 60 A.2d 360, 362 (Pa. Super. Ct. 1948)).

NTP again references Connecticut law in arguing that Plaintiff's replevin claim is subject to dismissal.   (Doc. No. 14 at 8–9.)   NTP asserts that because Plaintiff fails to plead "that NTP ever possessed the equipment," Plaintiff's replevin claim is subject to dismissal.   (Id. at 9.)

In response, Plaintiff notes that a replevin claim "is often pled as an alternative to conversion" and maintains that "[t]he focus in a replevin action is strictly limited to title and right of possession."   (Doc. No. 16 at 13.)   Plaintiff cites Pennsylvania Rule of Civil Procedure 1073.1(a), which it represents governs the requirements of a replevin claim, and states that it requires: "(1) a description of the property to be replevied, (2) its value, (3) its location if known, and (4) the material facts upon which plaintiff's claim is based."   (Id. (citing Lakeland Bank v. Sun-Re Cheese Corp., No. 4:22-cv-01076, 2023 WL 2145977, at *5 (M.D. Pa. Feb. 21, 2023).)   Plaintiff contends that its replevin claim against NTP alleges that it is the title owner of the Equipment, the value of the Equipment ($2,031,000.00), and that "NTP is continuously in unlawful possession of the Equipment" because "NTP represented to Plaintiff in the MLA that

_____

position that the amended complaint fails to plead NTP's possession of the Equipment (and NTP does not raise the gist of the action doctrine), the Court declines to address any potential implications of the doctrine here.

19

NTP accepted and [was] in possession of the Equipment." (Doc. No. 16 at 13.)  Plaintiff acknowledges that the amended complaint "alleged the location of the equipment as unknown" but states that "such an allegation does not defeat Plaintiff's claim." (Id.)

Upon careful consideration of the amended complaint, the briefs of the parties, and relevant authority, the Court finds that the amended complaint plausibly alleges a replevin claim for the same reason as it states a conversion claim—the Court has determined that the amended complaint's allegations support the plausible inference that NTP accepted possession of the Equipment purchased by Plaintiff.  Accordingly, the amended complaint plausibly alleges the deprivation of Plaintiff's property rights in the Equipment by NTP without lawful justification given NTP's alleged failure to make payments under the MLA.  The amended complaint also includes a detailed description of the property and its value.  See (Doc. No. 5-1 ¶¶ 54, 59).  The Court will deny NTP's motion to dismiss Plaintiff's replevin claim.

### 6.    Jury Demand and Attorney's Fees Request

As to the jury demand contained in Plaintiff's amended complaint, NTP argues that the Court should strike it from the amended complaint because the parties "unequivocally waived the right to a jury trial" in the MLA.  (Doc. No. 14 at 9.)  In response, Plaintiff concedes that the parties waived a jury trial right in the MLA (Doc. No. 16 at 14–15) and therefore does not object to the Court striking the jury demand in its amended complaint.  Accordingly, the Court will grant Defendant NTP's motion as to Plaintiff's jury demand.[13]

---

[13]  The Court notes that NTP includes its request that the Court strike the amended complaint's jury demand and request for attorney's fees as part of its Federal Rule of Civil Procedure 12(b)(6) motion to dismiss and does not reference Federal Rule of Civil Procedure 12(f), which explicitly governs motions to strike material from a pleading.  See Fed. R. Civ. P. 12(f) (governing motions to strike and providing that "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").  Given Plaintiff's agreement to the Court striking the jury demand in its amended complaint, the Court

20

Concerning Plaintiff's request for attorney's fees, NTP argues that this request "must be stricken because Nations Fund has pleaded no statutory or contractual provision to overcome the American Rule." (Doc. No. 14 at 9 (citing Peter v. Nantkwest, Inc., 589 U.S. 23, 27 (2019) and its description of the American Rule as "the background principle that parties are responsible for their own attorney's fees").) Plaintiff counters by stating that the contract governing the parties' relationship, the MLA, "provides otherwise." (Doc. No. 16 at 14.) Plaintiff quotes paragraph 16(c)(2) of the MLA, in which NTP "agreed to be liable for 'all reasonable legal fees (including consultation, drafting notices or other documents, expert witness fees, sending notices or instituting, prosecuting or defending litigation or arbitration) . . . incurred by reason of any Default.'" (Id. (quoting Doc. No. 5-1 ¶ 16(c)(2).) Plaintiff argues that "[t]he instant case is a result of NTP's default and, as such, falls within the ambit of the above fee-shifting provision" and therefore that the Court should deny NTP's request to strike its attorney's fees request.

Upon careful review of the provisions of the MLA, attached as an exhibit to Plaintiff's amended complaint (Doc. No. 5-1), the Court will deny Defendant NTP's request to strike Plaintiff's demand for attorney's fees.[14] Paragraph 16(c)(2) provides, in relevant part, as follows:

> Unless already specifically provided for in Section 16(b), if an Event of Default occurs with respect to any Schedule, Lessee shall also be liable for all of the following . . . (2) all reasonable legal fees (including consultation, drafting notices or other documents, expert witness fees, sending notices or instituting, prosecuting or defending litigation or arbitration) and other enforcement costs and

will grant Defendant NTP's motion in this regard despite Defendant NTP's failure to reference the appropriate provision of Rule 12.

[14] The Court again notes that NTP includes its request that the Court strike the amended complaint's request for attorney's fees as part of its Federal Rule of Civil Procedure 12(b)(6) motion to dismiss and does not reference Federal Rule of Civil Procedure 12(f), which explicitly governs motions to strike material from a pleading. See Fed. R. Civ. P. 12(f).

expenses incurred by reason of any Default or Event of Default or the exercise of Lessor's rights or remedies . . . .

(Doc. No. 5-1 ¶ 16(c)(2).)   As noted by Plaintiff, its amended complaint alleges that Defendant NTP as lessee of certain equipment is in default of its obligations to Plaintiff as lessor under the MLA.   Accordingly, the allegations of Plaintiff's amended complaint plausibly fall within the parameters of the MLA's fee-shifting provision, and so the Court will deny Defendant NTP's request that the Court strike Plaintiff's attorney's fees request.   The Court turns to Plaintiff's request for default judgment as to Defendant Poseidon.

**B.      Plaintiff's Request for Default Judgment as to Defendant Poseidon**

As an initial matter, the Court notes that Plaintiff directs its request to the Clerk of Court to enter default judgment for a purported "sum certain" pursuant to Federal Rule of Civil Procedure 55(b)(1).[15]   (Doc. No. 19 at 1.)   However, pursuant to the Rule, an amount is not a "sum certain" just because the pleadings or an affidavit attest to a particular sum.   See Moore, et al., supra, § 55.20[3] (stating that "[w]hether the amount of a claim is certain is not a matter of pleading, but depends on the nature of the claim and the circumstances" and "[a] claim does not become certain merely because the complaint or the affidavit identifies a purported total").   Accordingly, Plaintiff's request for default judgment is properly directly to the Court pursuant to Rule 55(b)(2), not the Clerk of Court pursuant to Rule 55(b)(1).

As noted supra, Federal Rule of Civil Procedure 55(b)(2) permits the entry of a default judgment upon application to the court by a party.   A district court possesses the discretion to enter a default judgment against fewer than all defendants in a case.   See Fed. R. Civ. P. 54(b).

---

[15]   Rule 55(b)(1) provides that "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."   See Fed. R.

However, "[a] court may not enter a default judgment against one of several defendants when: (1) the theory of recovery rests [] on joint liability; or (2) the kind of relief requested is such that it must be granted against each defendant."   See Stout Street Funding LLC v. Johnson, 873 F. Supp. 2d 632, 649 (E.D. Pa. 2012) (citing Frow v. De La Vega, 82 U.S. 552, 554 (1872) and Farzetta v. Turner & Newall, Ltd., 797 F.2d 151, 154 (3d Cir. 1986) (stating that "Frow stands for the proposition that if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved").   "Although the rule developed in the Frow case applies when the liability is joint and several," the rule "can be extended to situations in which joint liability is not at issue but several defendants have closely related defenses," and "[w]hen that is the case, entry of judgment also should await an adjudication of the liability of the nondefaulting defendants."   See Wright, et al., supra, § 2690.

Here, Plaintiff's amended complaint alleges four claims against Defendant NTP (breach of contract, alternative unjust enrichment, conversion, and replevin), and three "alternative" claims against Defendant Poseidon.   Those claims allege "alternatively" that: "Poseidon has been unjustly enriched by receiv[ing] $2,031,000.00 from Plaintiff and failing to deliver the Equipment" (Doc. No. 5 ¶ 45); "to the extent Poseidon is in possession of the equipment, such possession is intentionally wrongful following the payment to Poseidon from Plaintiff" (id. ¶ 49); and "to the extent Poseidon is in possession of the Equipment, such possession is intentionally wrongful following the payment to Poseidon by Plaintiff" (id. ¶ 55).

Based on the allegations of the complaint, it appears clear that the relative liability of

---

Civ. P. 55(b)(1).

Defendant NTP and Defendant Poseidon to Plaintiff is based on which defendant possesses the

Equipment referenced in the MLA.   If the Court were to grant a default judgment against

Defendant Poseidon based on Plaintiff's "alternative" theory that Poseidon possesses the

Equipment, and the facts adduced in discovery ultimately reveal that Defendant Poseidon

delivered the Equipment to Defendant NTP, who continues to possess it, and Plaintiff prevails as

against NTP, any default judgment entered against Defendant Poseidon would be inconsistent

with that result.   Accordingly, to ensure that any relief ultimately entered in this case will be

consistent, the Court exercises its discretion to deny Plaintiff's motion for default judgment as to

Defendant Poseidon until the claims against Defendant NTP are adjudicated.   See Wright, et al.,

supra, § 2690 (stating that "[t]he key in deciding whether to extend Frow outside situations in

which liability is joint and several is to recognize that the Frow principle is designed to apply

only when it is necessary that the relief against the defendants be consistent"); Thomas v.

Williams, No. 21-cv-08446, 2022 WL 1411187, at *1 (D.N.J. Apr. 28, 2022) (stating "[b]ecause

the relief as to all of the claims that are asserted against all of the Defendants should be

consistent, the Court declines to exercise its discretion to grant judgment in Plaintiff's favor

against [one defaulting defendant] while the claims against the non-default defendants remain

viable").

24

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant NTP's motion to dismiss Plaintiff's amended complaint and will deny without prejudice Plaintiff's request for entry of default judgment against Defendant Poseidon.   An appropriate Order follows.

 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania